**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

**SARAH BANFIELD,**

      **Plaintiff,**

**v.**                                     **Case No:  2:12-CV-353-FtM-29DNF**

**COMMISSIONER OF SOCIAL
SECURITY,[1]**

      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff Sarah Banfield seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits and Supplemental Security Income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **Affirmed** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

1  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On June 10, 2008, Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income asserting a disability onset date of May 26, 2008. (Tr. 131). These claims were denied initially on December 8, 2008, and denied upon reconsideration on April 9, 2009. (Tr. 70-77, 78-83).  A hearing was held before Administrative Law Judge Thomas J. Gaye (hereinafter "ALJ"), on January 13, 2011. (Tr. 37- 65).  The ALJ issued an unfavorable decision on January 26, 2011, finding that Plaintiff was not disabled. (Tr. 21-36).  Plaintiff requested review of the ALJ's decision on March 24, 2011. (Tr. 16-20). On May 11, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5).  Plaintiff filed the instant action (Doc. 16) in the United States District Court on December 14, 2012, and the matter has been fully briefed and referred to the undersigned for issuance of a Report and Recommendation.

### C.  Summary of the ALJ's Decision

The ALJ found Plaintiff met the Social Security Act's insured status requirements through September 30, 2013. (Tr. 26). The primary issue for review by the ALJ, was whether Plaintiff was disabled under sections 216(i), 223(d), and 1614(a)(3)(A)  of the Social Security

Act. ((20 C.F.R. § 216(i), 223(d), and 1614(a)(3)(A)) (Tr. 24). The ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act. (20 C.F.R. § 404.1520(a); 416.920(a)) (Tr. 24-32). At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 26, 2008. (Tr. 26). At step two, the ALJ found that Plaintiff suffered from the severe impairments of "hypertension and left eye glaucoma." (Tr. 26).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926) (Tr. 28). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except for the following limitations: "limited depth perception and field of vision; no concentrated exposure to extreme heat, cold, or humidity; and no concentrated exposure to hazards-unprotected heights or dangerous machinery)." (Tr. 28). At step four, the ALJ found Plaintiff unable to perform her past relevant work as an apartment rental agent. (Tr.30).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with job existing in significant numbers in the national economy. (Tr. 30). The ALJ concluded that Plaintiff was not disabled as of May 26, 2008, through the date of his decision. (Tr. 31).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390

(1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts

Plaintiff was born on June 25, 1965 (Tr. 113, 121), and was forty-five years of age on the date of the hearing. (Tr. 42). She has three children, one of whom resides with her, along with her boyfriend. (Tr. 42). Plaintiff attended college for two and a half years at Southwest Florida College, studying medical assistance and medical administration. (Tr. 43). Plaintiff is five feet and four inches tall and weighs two hundred and ninety pounds. (Tr. 43). Plaintiff's previous employment includes being a cashier, stocking shelves, janitorial/custodial work, working at a

daycare center, and as an apartment rental agent. (Tr. 44-8). Plaintiff has not worked since 2008. (Tr. 137-40).

As of the date of the ALJ's decision, Plaintiff testified that she experiences shortness of breath when walking and sitting, frequent dizziness, swelling of her feet, and chest pain. (Tr. 51-55). Plaintiff testified that she needs assistance cooking, cleaning, laundering clothes, and shopping. (Tr. 51-2). Plaintiff testified that her typical day consists of morning reading and sitting for periods of fifteen to twenty minutes at a time, interrupted by getting up and moving around. (Tr. 53). When asked how many bad days per week Plaintiff has, Plaintiff testified that she experiences four bad days per week caused by her pain. (Tr. 59).

### B. Summary of Medical Evidence

On February 20, 2004, Plaintiff was voluntarily Baker Acted at Lee Mental Health for depression and was discharged the following day with a diagnosis of adjustment disorder with depressed mood. (Tr. 385-86, 388-89).

On May 29, 2007, Plaintiff visited Southwest Regional Hospital for hypertension, renal insufficiency, nausea, and vomiting. (Tr. 372-74). Plaintiff underwent a scope and biopsy, which revealed mild gastritis. (Tr. 368) The treating surgeon, Suresh Chavakula, M.D., noted that Plaintiff's nausea was likely related to her blood pressure fluctuation issues. (Tr. 368-69). On October 16, 2007, Plaintiff went to Southwest Regional Hospital with complaints of chest pain, which was noted to be caused by non-compliance to her medications. (Tr. 361-65). In November 2007, Plaintiff visited Family Health Centers for a sleep study, which was positive for sleep apnea. (Tr. 282). In December 2007, Plaintiff was referred to a nephrologist by Family Health Centers for uncontrolled hypertension. (Tr. 280).

Plaintiff visited Southwest Regional Hospital on April 23, 2008, for uncontrolled hypertension and chest pain, and was discharged April 26, 2008. (Tr. 352-53, 358-60). On May 20, 2008, Plaintiff visited Family Health Centers and was diagnosed with renal disorder. (Tr. 256). Plaintiff visited Southwest Regional Hospital on May 27, 2008, for left eye pain and swelling, and was admitted for a hypertensive emergency. (Tr. 199-201, 211-213, 217-231, 350-351, 354-357). Plaintiff's blood pressure was 192/119 at admission and Plaintiff was given metroprolol, lowering her blood pressure to 164/106. (Tr. 217).  Plaintiff was assessed with left eye pain secondary to increased internal ocular pressure and was prescribed Timoptic. (Tr. 219). Plaintiff's discharge diagnosis indicated preglaucoma. (Tr. 221).  On December 9, 2008, Plaintiff was admitted to Southwest Regional Hospital for complaints of chest pain and was diagnosed with hypertensive crisis and severe hypothyroidism. (Tr. 348-349).

On May 14, 2009, Plaintiff visited Gulf Coast Hospital and was diagnosed with atypical chest pain and hypertension. (Tr. 485-90). Plaintiff was ordered to strictly comply with her medications. (Tr. 489-90). On May 24, 2009, Plaintiff was admitted to Gulf Coast Hospital for chest pain and uncontrolled hypertension. (Tr. 483). Plaintiff underwent cardiac catheterization and was diagnosed with mild nonobstructive coronary artery disease. (Tr. 483-84). On September 1, 2009, Plaintiff was Baker Acted at Lee Mental Health for a suicide attempt. (Tr. 398-401, 415-418). Plaintiff was diagnosed with moderate, recurrent major depressive disorder and generalized anxiety disorder and was discharged the following day. (Tr. 401). Plaintiff returned to Lee Mental Health for psychiatric follow up visits. (Tr. 391-95, 514-21). On November 29, 2009, Plaintiff went to Gulf Coast Hospital for an EKG. (Tr. 491). The results of the EKG revealed possible left atrial enlargement and a pulmonary disease pattern, with no significant change from the May 24, 2009 ECG. (Tr. 491).

On May 6, 2010, Plaintiff visited Lee Mental Health for a follow-up evaluation and was diagnosed with major depression and hypertension. (Tr. 395). Plaintiff was given Clonidine for her symptoms. (Tr. 394-95). On May 24, 2010, Plaintiff visited Lee Mental Health for a follow-up visit and was given Clonidine for her blood pressure. (Tr. 394). Plaintiff was instructed to go to the emergency room for her blood pressure. (Tr. 394). On June 13, 2010, Plaintiff was admitted to Lehigh Regional Medical Center with complaints of chest pain, facial pain, and left arm swelling. (Tr. 433). Plaintiff underwent an EKG, which revealed left atrial enlargement and pulmonary disease. (Tr. 433). Plaintiff also underwent perfusion testing which revealed the left ventricle does not contract well, abnormal left ventricular function with mild anterior wall hypokinesis, apical akinesis, moderate inferior wall hypokinesis, and left ventrical ejection fraction of 39%. (Tr. 437). On October 17, 2010, Plaintiff visited Lehigh Regional Medical Center with complaints of radiating chest pain with shortness of breath, nausea, and excessive sweating. (Tr. 459). Plaintiff was admitted to the intensive care unit due to her continued, uncontrolled hypertension. (Tr. 460). Plaintiff underwent an EKG, which showed left anterior fascicular block and possible left ventricular hypertrophy. (Tr. 460). Plaintiff was discharged four days later with diagnoses of hypertensive urgency, atypical chest pain, and dilated cardiomyopathy. (Tr. 462). On November 23, 2010, Plaintiff was seen for a psychiatric follow-up and was diagnosed with major depression, hypertension, and sleep apnea. (Tr. 391). Plaintiff was prescribed Celexa and directed to follow-up in one month. (Tr. 391).

On March 11, 2011, Plaintiff went to the emergency room of Lehigh Regional Medical Center with chest pain and an abscess on her left arm. (Tr. 531-35). Plaintiff's abcess was incised and drained, her thyroid medication was increased, and she was released home. (Tr. 533-34). On May 15, 2011, Plaintiff visited the emergency room at Lehigh Regional Medical Center with

complaints of chest pain. (Tr. 524). Plaintiff underwent an echocardiogram, revealing moderate-to-severe concentric left ventricle hypertrophy with mildly decreased left ventricle function. (Tr. 524). Plaintiff's discharge diagnoses were chest pain most likely secondary to anxiety and medical noncompliance, hypertension, obesity, congestive heart failure, and GERD. (Tr. 524).

### C. State Agency Evaluations

On November 20, 2008, Plaintiff presented to Kenneth A. Berdick, M.D., at the request of the Office of Disability Determinations, for a physical examination. (Tr. 336-37). Plaintiff complained of headaches and vision problems in her left eye. (Tr. 336). Plaintiff's vision was found to be 20/25 in the right eye and 20/200 in the left eye, impaired on the left to upper and lower outer quadrant confrontation. (Tr. 336).  Plaintiff's blood pressure was 180/130  (and was instructed to seek medical care at an emergency facility). (Tr. 336-37). Dr. Berdick gave Plaintiff samples of Diovan in an attempt to stabilize her blood pressure until she could be seen by a treating physician. (Tr. 337).

On December 5, 2008, a Physical Residual Functional Capacity Assessment was completed by single decision maker, Ms. Deborah Kol.[2] (Tr. 338-45). Ms. Kol found  Plaintiff to have essential hypertension and possible retinal artery embolus. (Tr. 338). Regarding Plaintiff's limitations, Ms. Kol determined Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk for 6 hours in an 8 hour work day; sit for about 6 hours in an 8 hour work day; and could perform unlimited pushing or pulling. (Tr. 339-83). Ms. Kol found Plaintiff could frequently perform climbing, stooping, kneeling, crouching, and crawling. (Tr. 340). In addition, Ms. Kol found Plaintiff could have unlimited exposure to extreme heat and cold, wetness, humidity, noise, vibrations, and fumes. (Tr. 342). However, regarding Plaintiff's visual limitations, Ms. Kol found Plaintiff to have limited depth perception and field of vision.

---

2 The record does not provide Ms. Kol's credentials.

(Tr. 341). Ms. Kol noted that Plaintiff's vision was right 20/25, left 20/200, impaired on the left upper and lower quadrants, with depth perception limited to seeing out of her right eye only. (Tr. 341). Ms. Kol determined Plaintiff had unlimited near acuity, far acuity, accommodation, and color vision. (Tr. 341).

On April 3, 2009, an RFC Assessment was completed by Thomas Renny, D.O. (Tr. 376-83). Dr. Renny diagnosed Plaintiff with hypertension/headaches, vision loss, and chronic renal insufficiency. (Tr. 376). Dr. Renny determined that Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk for 6 hours in an 8 hour work day; sit for about 6 hours in an 8 hour work day, and could perform unlimited pushing or pulling. (Tr. 377). Dr. Renny found Plaintiff could frequently perform climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 378). Dr. Renny found Plaintiff could have unlimited exposure to wetness, noise, vibrations, fumes hazards, but Plaintiff should avoid concentrated exposure to extreme heat and cold, as well as humidity. (Tr. 378-80). Regarding Plaintiff's visual limitations, Dr. Renny found Plaintiff had limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision. (Tr. 379).

### D. Specific Issues

Plaintiff raises three issues on appeal.  They are:  (1) whether the ALJ erred in evaluating Plaintiff's mental impairment; (2) whether the ALJ erred in failing to consider Plaintiff's pain and in evaluating Plaintiff's credibility; (3) whether the ALJ erred in considering Plaintiff's potential for absenteeism and in finding Plaintiff capable of performing other work. (Doc. 16 at 8-13).

1.   **Whether the ALJ erred in evaluating Plaintiff's mental impairment**

Plaintiff asserts that the record reflects that her depression and anxiety are severe impairments, and that the ALJ erred by not finding that these impairments significantly affect her ability to perform basic work activities. (Doc. 16 at 8-9).   The   Commissioner   argues   that Plaintiff did not meet her burden of proving that her depression and anxiety were severe impairments and that the ALJ properly considered the Plaintiff's mental condition. (Doc. 17 at 5).

The Eleventh Circuit has held that "a claimant bears the burden of proving she has a severe impairment or combination of impairments." *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999). In determining whether an individual is disabled, "the court always considers the medical opinion . . . together with the rest of the relevant evidence receive[d]." 20 C.F.R. § 404.1527(c).  An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

In this case, the ALJ considered Plaintiff's mental condition and that Plaintiff's "medically determinable mental impairments of major depressive disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. (Tr. 26-27).   In reaching this conclusion, the ALJ considered the four broad functional areas (known as "paragraph B" criteria) set out in the disability regulations for evaluating mental disorders and in section 12.00(c) of the Listing of Impairments. (20 C.F.R., Part 404, Subpart P, Appendix 1) (Tr. 27).   The ALJ stated that for the first three paragraph criteria of daily living, social functioning, and concentration, persistence, or pace, he found

Plaintiff only had a mild limitation. (Tr. 27).  The ALJ noted that Plaintiff testified that she can perform a wide range of daily living activities such as cooking, doing laundry, grocery shopping, and washing dishes. (Tr. 27). For the fourth paragraph B criteria, the ALJ noted that Plaintiff had no episodes of decompensation which have been of extended duration. (Tr. 27).   The ALJ noted that Plaintiff was seen in the hospital due to a neighbor's concern for her in September 2009 but that she had no suicidal ideation or plan. (Tr. 27).  Further, the ALJ noted that Plaintiff was seen for one psychiatric follow-up appointment immediately thereafter but then was not seen for mental health treatment until eight months later. (Tr. 27).  Based on these considerations, the ALJ concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitations in the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth areas, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)). (Tr. 27).

The ALJ properly considered Plaintiff's impairments of depression and anxiety and found them to be not severe.  The ALJ's determination of Plaintiff's severe impairments is supported by substantial evidence and will not be disturbed on review.

### 2. Whether the ALJ erred in failing to consider Plaintiff's pain and in evaluating Plaintiff's credibility

Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's pain, which she claims precludes her from working. (Doc. 16 at 10). Plaintiff argues that she presented evidence of back pain, chest pain, ankle pain, knee pain, as well as frequent headaches, but the ALJ failed to consider this pain in his disability determination. (Doc. 16 at 10).  The Commissioner argues that the ALJ properly assessed the intensity and persistence of Plaintiff's symptoms and correctly determined that her complaints were inconsistent with the medical evidence. (Doc. 17 at 13).

When a claimant attempts to establish a disability through subjective complaints of pain or other symptoms, she must show 1) evidence of an underlying medical condition, and either 2) objective medical evidence that confirms the severity of the alleged pain or other symptom arising from the condition, or 3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain or other symptom. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If an ALJ "refuses to credit such testimony, he must articulate explicit and adequate reasons" for doing so. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir. 1987). Such explicit and adequate reasons must be supported by substantial evidence. *Id.* at 1012.

In this case, the ALJ did not err by failing to explicitly consider Plaintiff's subjective complaints of pain in her ankle, knee, and back. Although Plaintiff testified at the hearing of such ankle, knee, and back pain, Plaintiff only cites to a single assessment in the record supporting such allegations, a note by Dr. Sudha Meraney that Plaintiff had a backache. (Tr. 424). In terms of Plaintiff's chest pains and headaches related to her high blood pressure, the ALJ properly applied the Eleventh Circuit's pain standard and found that, while Plaintiff's medically determinable impairments could be reasonably expected to cause her alleged symptoms, her subjective complaints concerning the intensity and persistence of her symptoms were not entirely credible. (Tr. 28). The ALJ noted that despite Plaintiff's alleged vision problems, Plaintiff's vision was reported to be 20/25 and 20/200 and that her hypothyroidism is treated with replacement therapy without functional loss. (Tr. 29). Additionally, the ALJ noted that Plaintiff's several hospital admissions for high blood pressure and mild coronary artery disease was due to her noncompliance with blood pressure medications. (Tr. 29). Although the ALJ noted that Plaintiff's noncompliance with medication is due to Plaintiff's inability to afford

- 12 -

medication, the ALJ also provided that there are other instances of noncompliance with care in the record which are not excused by Plaintiff's inability to afford medication. (Tr. 29).  For example, Plaintiff missed numerous appointments and was informed by her treating psychiatrist, Dr. Baracskay, that a 90-pill prescription of Celexa only costs $10 at Wal-Mart. (Tr. 29).

Plaintiff further argues that the ALJ erred in evaluating Plaintiff's credibility because the ALJ found Plaintiff to be "less than credible," while also stating in his opinion that he gave significant weight to the state medical examiners at Exhibits 5F and 7F, who both made statements in favor of Plaintiff's credibility. (Doc. 16 at 11) (Tr. 28-9, 343, 381).  However, although the ALJ gave great weight to the medical examiners, this does not mean that the ALJ accepted the state medical examiners' opinions in their entirety. (Doc. 16 at 11).  The ALJ pointed out that "the examiners did not have an opportunity to consider all of the medical evidence on record." (Tr. 29).  The ALJ stated that he gave great weight to the state examiners' opinions because their opinions "are consistent with the medical evidence of record" by finding that Plaintiff does in fact have severe impairments that cause functional limitations. (Tr. 29).  Moreover, the ALJ stated that the later submitted medical records indicate that Plaintiff's medical status has not substantially changed from the time the state examinations were conducted, which is why they are consistent with the medical evidence of record, and why he afforded them great weight. (Tr. 29).  Therefore, it is not contradictory that the ALJ could disagree with the credibility statements made by the state examiners, while simultaneously agreeing with their medical findings; the state examiners did not have all the facts to make the same credibility finding as the ALJ, but did have enough facts to determine impairments. (Tr. 29).

Based on the evidence discussed above, the ALJ did not err by failing to consider Plaintiff's complaints of pain or in his determination of Plaintiff's credibility.

### 3. Whether the ALJ erred in failing to consider Plaintiff's absenteeism and in finding Plaintiff capable of performing other work

Plaintiff argues that ALJ erred in finding her capable of performing other work because her medical record and past hospitalizations show that it is reasonable to conclude that she will miss more than three days of work a month, which according to the vocational expert precludes her from any type of employment. (Doc. 16 at 12). Additionally, Plaintiff argues that the ALJ erred by not finding that she has blurry vision which would give her difficulty performing any job. (Doc. 16 at 12).

At step five of the sequential evaluation process, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Id.*

In this case, the ALJ asked the vocational expert to consider

> a person of [Plaintiff's] age, education, and type of past work experience at the sedentary level; limited depth perception and field of vision, with that bad eye. And no concentrated exposure to extremes of heat, cold, humidity, or hazards, by which I mean unprotected heights and dangerous machinery. And those are limited to no concentrated [sic].

(Tr. 61). The ALJ then asked the vocational expert whether there are jobs that such a person can work. (Tr. 62). The vocational expert identified three such jobs: receptionist, document preparer, and final assembler. (Tr. 62-63). Upon being examined by Plaintiff's attorney, the vocational

expert testified that an individual with limited depth perception can work as a document preparer because the job requires frequent near acuity, no depth perception, and only occasionally color vision. (Tr. 63).  The ALJ testified that a person with blurry vision would have a difficult time working any job and that a person who missed more than three days of work per month would be unable to maintain employment. (Tr. 64).

In this case, the ALJ stated that he considered the vocational expert's testimony that an individual with blurry vision would have difficulty with any job, and that an individual who misses more than 3 days of work per month would not be able to maintain any employment. (Tr. 31). The ALJ reviewed the entire record and found that the medical evidence of record does not support such a restriction on Plaintiff's ability to work. (Tr. 31).  Although Plaintiff contends that she has blurry vision, she fails to cite a single medical record showing such a complaint or diagnosis.  Additionally, Plaintiff's state agency evaluations, while finding that Plaintiff's vision was 20/25 in the right eye, 20/200 in the left eye, and impaired on the left to upper and lower outer quadrants, did not find Plaintiff to have blurry vision.  As Plaintiff has failed to show that she has blurry vision, the ALJ did not err by not limiting Plaintiff's RFC to account for blurry vision.  The ALJ posed a hypothetical question encompassing Plaintiff's RFC, including its limitations, and, thus, the ALJ did not err by relying on the vocational expert's testimony that there are jobs that Plaintiff could perform.

**IT IS RESPECTFULLY RECOMMEDED:**

That the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida on August 23, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties